IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CR-197-FL-1
No. 5:16-CV-850-FL

| | | |
|---|---|---|
| CHRISTOPHER CIAMPA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, as corrected and amended, (DE 76, DE 85), and the government's motion to dismiss, (DE 88). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Robert B. Jones, Jr. entered memorandum and recommendation ("M&R"), (M&R (DE 94)), wherein it is recommended that the court deny petitioner's motion and grant respondent's motion. Petitioner timely filed objections to the M&R, and in this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the M&R, denies petitioner's motion, and grants respondent's motion.[1]

### BACKGROUND

On September 5, 2014, pursuant to a written plea agreement, petitioner pleaded guilty to a two-count criminal information charging him with conspiracy to commit offenses against the United States, that is bribery and theft of government property, in violation of 18 U.S.C. § 371 (count 1),

---

[1] This § 2255 matter and underlying criminal case were reassigned to the undersigned district judge from the district judge who presided over petitioner's original judgment of conviction and sentencing.

and bribery of a public official, in violation of 18 U.S.C. § 201(b)(2) (count 2).

The criminal information to which petitioner pleaded guilty alleged in part as follows:

> [Petitioner was] a Sergeant in the United States Army, and assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina . . . . From in or about February 2011 through in or about January 2012, CIAMPA was deployed to Afghanistan with the 3rd Special Forces Group Service Detachment, and was assigned to Camp Brown, a Special Forces compound that is part of Kandahar Air Field . . . . One of CIAMPA's chief responsibilities during the deployment was management of Transportation Movement Requests ["TMRs"] . . . . It was the purpose of the conspiracy for CIAMPA and his co-conspirators to use their positions as public officials to: (a) create false TMRs and fraudulently certify that the TMRs had been completed, thereby causing unlawful payments for the TMRs; and (b) facilitate the unlawful theft of U.S. fuel designated for wartime operations, all in return for money, and to send these proceeds to the United States through various means designed to avoid detection.

(DE 1 ¶¶ 1-3, 11). The criminal information set forth several overt acts, including that "the co-conspirators falsely certified that the false TMRs representing approximately 114 truckloads of fuel had been completed successfully," and additionally alleged criminal proceeds of $10,812,000.00. (Id. ¶ 12; see also forfeiture notice).

As part of his plea agreement, petitioner agreed to waive the right to challenge his conviction or sentence on collateral review with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct not known at the time of petitioner's guilty plea. (Plea Agreement (DE 15) at 1-2). Additionally, the plea agreement included stipulation between the parties as to certain guidelines provisions, including the amount of loss. (Id. at 9-10 ("The appropriate loss range for guideline sentencing purposes is more than $7,000,000 and less than $20,000,000 . . . .")).

At sentencing on September 29, 2015, the government moved for a downward departure, pursuant to USSG § 5K1.1, based on petitioner's substantial assistance, and the court granted the government's motion, imposing a 60-month term of imprisonment for count one, concurrent with

a 120-month term of imprisonment for count two.[2]

Petitioner appealed his judgment, challenging only the court's calculation of restitution. Brief for Appellant at 7, 19, United States v. Ciampa, No. 15-4613 (4th Cir. January 28, 2016), ECF No. 25. The statement of facts in petitioner's brief is consistent with both his confession previously provided to the government on June 13, 2013, and the Presentence Report ("PSR"). (Compare id. with DE 57-1, PSR (DE 32) at 3-7). The Fourth Circuit, held "[u]pon review of the plea agreement and the transcript of the Fed. R. Crim. P. 11 hearing, we conclude that Ciampa knowingly and voluntarily waived his right to appeal, and that the issues Ciampa seeks to raise on appeal fall squarely within the scope of his waiver of appellate rights." United States v. Ciampa, No. 15-4613, (4th Cir. June 3, 2016), ECF No. 39.

On October 12, 2016, petitioner filed the instant motion to vacate pursuant to 28 U.S.C. § 2255, alleging the following four grounds as warranting relief: 1) the prosecution failed to provide full discovery and provided misleading or mischaracterized information, resulting in a conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily; 2) the prosecution engaged in misconduct by withholding favorable evidence to the defendant and by providing to the court misleading information; 3) newly discovered evidence, and 4) ineffective assistance of counsel.[3]

On April 19, 2017, the government filed its motion to dismiss petitioner's § 2255 motion,

---

[2] Petitioner's advisory guidelines range, to which there were no objections, was 188 to 235 months' imprisonment, which resulted in a advisory guideline recommendation of 180 month sentence on count two and a 8 month consecutive sentence on count one to reach the minimum, taking into account the applicable statutory maximum sentences. (DE 61 at 2-3; PSR (DE 32) addendum (noting that petitioner's sole objection had no impact on the guidelines range)).

[3] Petitioner's amended motion to vacate, filed March 22, 2017, asserts the same four grounds supporting relief with further briefing provided on each ground.

3

arguing petitioner's claims should be dismissed 1) related to his plea agreement and guilty plea as within the scope of petitioner's appeal waiver as found in his plea agreement, as procedurally defaulted, and for failure to state a claim; 2) related to his claims of post-plea prosecutorial misconduct as procedurally defaulted and for failure to state a claim; 3) related to his claims of new evidence as not providing a basis to set aside his guilty plea; and 4) related to his claims of ineffective assistance of counsel as partially within the scope of petitioner's appeal waiver and for failure to state a claim.

On April 24, 2018, the magistrate judge issued M&R, recommending denial of petitioner's motion and grant of the government's motion. On May 7, 2018, petitioner filed objection to the M&R, presenting identical arguments to this court as petitioner presented in support of his original 2255 motion, as amended, (compare DE 97 with DE 85) but additionally and briefly arguing that the magistrate judge erred by concluding that 1) petitioner is bound by his guilty plea; 2) petitioner's allegations of prosecutorial misconduct are partially barred by his plea agreement and completely barred by procedural default; 3) petitioner's claims of new evidence do not provide a basis to set aside his guilty plea; and 4) petitioner's claims of ineffective assistance of counsel are partially barred by his plea agreement and also fail to state a claim.

## COURT'S DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of the M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th

4

Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12.

B.   Analysis

   1.   Petitioner is Bound by his Plea Agreement

Plea negotiations and the plea agreement are central to the American criminal justice system. See Blackledge v. Allison, 431 U.S. 63, 71 (1977); accord Santobello v. New York, 404 U.S. 257, 260–61 (1971); Brady v. United States, 397 U.S. 742, 751–52 (1970). The plea process, if properly administered, stands to benefit not only the defendant and government, but also the courts and society. See Blackledge, 431 U.S. at 71. It provides all interested parties certainty in the case's

5

outcome, unlike a trial; conserves scarce judicial resources; and affords the public a measure of security. Id.

To ensure those benefits remain undisturbed by future developments, guilty pleas typically "are accorded a great measure of finality." Id. The consequential advantages of plea bargaining are put asunder when a defendant later successfully challenges his sentence either on appeal or on collateral attack. Id. Thus, to ensure the certitude of a properly executed plea agreement, prosecutors routinely secure waivers of appeal and collateral-attack rights as a term of the agreement. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Courts generally enforce these waivers, so long as the defendant knowingly and voluntarily agreed to them. Id.; United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990).

As stated above, petitioner asserted in his original § 2255 motion and then repeated in his objections to the magistrate judge's recommendation that his guilty plea was unlawfully induced and involuntarily obtained for multiple reasons in that 1) defendant did not understand the nature of the charge and the consequences of the plea; 2) the prosecution failed to provide full pre-plea discovery and withheld actual pricing documents and service authorizations; and 3) the prosecution mischaracterized petitioner and other's roles and scope of the loss and harm resulting from petitioner's involvement in the conspiracy. (See DE 97 at 1, 24-29). Each of petitioner's assertions concern conduct that occurred prior to petitioner entering a guilty plea before the court.

As detailed by the magistrate judge, at arraignment, the court advised petitioner of his rights and the charges against him, along with the maximum punishments. (Arraignment Tr. (DE 26) at 4:2-6:2). Petitioner affirmed he was entering into a plea agreement with the government of his own choice, he had not been forced or pressured to plead guilty, and he understood the appeal and

post-conviction rights he was waiving. (Id. at 6:3-22.) The court also advised petitioner related to the provisions in the agreement bearing on sentencing, including that "the loss range is more than 7 million but less than 20 million, resulting in a 20-level increase." (Id. at 7:25-8:4.) Petitioner pleaded guilty to the criminal information and affirmed that he was in fact guilty. (Id. at 8:11-15.)

In determining that defendant's guilty plea was valid and the appeal/post-conviction waiver enforceable as to matters within its scope, the magistrate judge properly looked to the plea agreement, the above Rule 11 colloquy, petitioner's sworn statements in response, the criminal information to which he pleaded guilty, the unchallenged factual basis for the guilty plea, and the district court's finding that the plea was knowing and voluntary, as well as the fourth Circuit's agreement with that finding and enforcement of the waiver provision. (M&R (DE 94) at 8-11). The magistrate judge then explained how other aspects of the case confirmed petitioner's guilty plea was knowing and voluntary including petitioner's confession,[4] the guilty pleas of his co-conspirators, and the arguments and evidence showing that petitioner knew about the alleged misrepresentations prior to pleading guilty.[5] (Id. at 11-13); see also United States v. Blick, 408 F.3d 162, 169 (4th Cir.

---

[4] On June 13, 2013, prior to petitioner being charged, he provided a statement to the Federal Bureau of Investigation in conformity with the conduct charged in the criminal information to which he pleaded guilty. (DE 57-1). Petitioner explained how the scheme worked and admitted that at one point when he believed his coconspirator was not going to share the profits as promised, petitioner cut out the co-conspirator and escalated the fraud by increasing the frequency and number of TMRs issued. (Id. at 2-3). Petitioner admitted that he ultimately received roughly $1,000,000 from the scheme, but used much of the money to purchase needed items for the troops or gave money directly to other troops, although he purchased a personal vehicle and retained approximately $200,000 in cash that he brought back to the United States hidden on his person and in a stereo. (Id. at 3-5; see also PSR (DE 32) at ¶¶ 7-20).

[5] Petitioner's argument and evidence presented in support of his petition indicate that he was aware, prior to pleading guilty, of the government's currently alleged misrepresentations of his conduct in the criminal information and plea filings. Petitioner's retained counsel represented him from June 2013 through October 2015, and petitioner states that "[d]uring the intervening two-year period, the defendant stated on numerous occasions that contents within the criminal information sheet, plea filings and sentencing documents were fraudulent and did not represent the facts of the case, to no avail." (See DE 85 at 5; see also Aff. of Gary T. Ciampa (DE 85-1) ¶ 2 ("When we were first presented the draft information sheet and plea in late summer of 2014, we were stunned at the misrepresentations by the government."); Aff. of Laura J. Ciampa (DE 85-2) ¶ 4 ("[W]e knew the plea agreement was a lie, we told [defense counsel] repeatedly that it was a lie, but they insisted that if it contained even a sliver of truth, Chris must accept the plea. They insisted the plea with a 5k was our best chance. Chris was not ok with this. By June of 2015, Chris had decided that he would

7

2005) ("Although this determination is often made based on the adequacy of the plea colloquy—specifically, whether the district court questioned the defendant about the appeal waiver—the issue ultimately is 'evaluated by reference to the totality of the circumstances.'").

Petitioner's only objection to the magistrate judge's recommendation is that he "could not knowingly waive his right . . . when the Government was affirmatively misrepresenting the facts of this case" and that defense counsel did not "gather, investigate and test the evidence." (DE 97 at 27). Petitioner does not address the argument, for example, that he voluntarily professed under oath that he was guilty of the criminal information.

Petitioner's claims of prosecutorial misconduct in advance of guilty plea are subject to dismissal due to petitioner's sworn representations at the plea hearing. (See DE 26); see also Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221-22; United States v. Hefner, 842 F.2d 731, 733 (4th Cir. 1988). Moreover, petitioner's guilty plea precludes petitioner's claim that the government withheld evidence from him. See United States v. Moussaoui, 591 F.3d 263, 285-86 (4th Cir. 2010); Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). As stated recently by the Supreme Court, a guilty plea "renders irrelevant–and thereby prevents the defendant from appealing–the constitutionality of case-related government conduct that takes place before the plea is entered" and also "relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty." Class v. United States, 138 S. Ct. 798, 805 (2018) (citations omitted).[6]

---

withdraw the plea.").

[6] Petitioner's claims concerning misconduct by defense counsel are addressed below in conjunction with his additional claims of ineffective assistance of counsel.

Accordingly, the court finds petitioner's first objection without merit.[7]

2.  Claims of Prosecutorial Misconduct

Generally, "claims not raised on direct appeal may not be raised on collateral review" and are thus procedurally defaulted. Massarro v. United States, 538 U.S. 500, 504 (2003). A procedural default, however, may be excused where the petitioner demonstrates "cause and actual prejudice" or "actual innocence." Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). Here, petitioner has demonstrated neither.

As stated, ground one of petitioner's § 2255 motion incorporates allegations of pre-plea prosecutorial misconduct, specifically that the government made misrepresentations in the criminal information and the plea process. (See M&R (DE 94) at 11–13; see also DE 76 at 4; DE 85 at 25–28). Ground two builds on these allegations by focusing on the punishment phase of the proceeding: petitioner maintains that government counsel knowingly withheld Brady materials and misrepresented at sentencing petitioner's "role and scope of the loss and harm resulting therefrom." (See DE 76 at 5; DE 85 at 15–23).

As stated above, ground one's assertions of government misconduct are within the scope of the appeal/post-conviction waiver in the plea agreement because petitioner knew the facts giving rise to these claims at the time he pleaded guilty. (See M&R (DE 94) at 12–13; see also Plea Agreement (DE 15) at 1–2). Regarding both ground one and ground two, the magistrate judge

---

[7] Petitioner also cites his recommendation for a Bronze Star for Meritorious Service, related to his work in support of the mission in Afghanistan, as evidence that the government committed prosecutorial misconduct by misrepresenting the scope of petitioner's conduct and the resulting harm to the government. (DE 85 at 26; DE 97 at 25-26). As noted by the magistrate judge, (M&R (DE 94) at 12 n.3), petitioner was recommended for the award by a co-conspirator, Jeffery Edmondson, in 2011 prior to petitioner being charged, (DE 53-7). Furthermore, as with the other evidence cited by petitioner, the inference he asks the court to draw from this evidence is in conflict with petitioner's admissions to the charged conduct upon entry of his guilty plea.

9

concluded that all of petitioner's allegations of prosecutorial misconduct were known to him when he pursued his direct appeal and, thus, are procedurally defaulted. (See M&R (DE 94) at 13–15). Because petitioner did not allege facts that would excuse his procedural default, the magistrate judge concluded that he cannot pursue these arguments in a § 2255 motion. (Id. at 14–15).

Petitioner does not argue otherwise, stating only that the government had access to the alleged facts, defendant was prevented from accessing these alleged facts, but that once petitioner's attorney withdrew, which occurred on November 12, 2015, (see DE 51), "the information was available to this defendant." (DE 97 at 21).

Petitioner's argument does not address the magistrate judge's findings or recommendation that petitioner has procedurally defaulted these claims, nor does petitioner allege facts that would support a finding either of "cause and actual prejudice" or "actual innocence." Bousley, 523 U.S. at 622; United States v. Pettiford, 612 F.3d 270, 281 (4th Cir. 2010) ("[A] petitioner cannot establish cause when the facts underlying the claim were in existence and were available upon a reasonably diligent search."). The court notes also that petitioner challenges the scope of his wrongful conduct and does not assert actual innocence. (See DE 85 at 25; DE 97 at 24 (stating the wrongful conduct comprised less than $700,000.00 and petitioner received $230,000.00, of which $170,000.00 was later turned over to the government)).

Accordingly, the court finds petitioner's second objection without merit.

3.  Claims of New Evidence

Petitioner contends he is entitled to a new trial, pursuant to Federal Rule of Criminal Procedure 33, based on newly discovered evidence found December 2015, "more than two months after defendant was sentenced," that "revealed the actual fuel costs and the existence of

authorizations for organizational procedures for logistics he followed while in Afghanistan." (DE 97 at 22-23).

Rule 33 is entitled "New Trial" and provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment." Fed.R.Crim.P. 33(a). However, Rule 33 relief is not available to petitioner, as he pleaded guilty. "By its express terms, Rule 33 is confined to those situations in which a trial has been had." United States v. Strom, 611 Fed. Appx. 148, 149 (4th Cir. 2015) (citation omitted) (quoting United States v. Graciani, 61 F.3d 70, 78 (1st Cir. 1995)).

Defendant does not address the inapplicability of Rule 33 to those have pleaded guilty. Petitioner instead objects to the magistrate judge's alternate finding regarding petitioner's allegations of new evidence, that petitioner procedurally defaulted his claims that the government overstated the loss amount and that his actions were approved by the chain of command. (See M&R (DE 94) at 16-18). As already discussed above and as also applicable here, the magistrate judge correctly concluded that defendant procedurally defaulted in that prior to petitioner's discovery of the alleged new documents in December 2015, petitioner was aware of his claims that the government overstated the loss amount and his actions were approved by the chain of command. (See id. at 16-17 (citing DE 85; DE 85-1; DE 85-2; DE 34-1; DE 85-3; DE 44); see also DE 98 at 8-9 (government's chart detailing that "most of the so-called 'new' evidence was already part of this Court' record before Ciampa filed his appellate brief")). Petitioner does not address the magistrate judge's conclusion that petitioner was aware of these claims and these claims are therefore procedurally defaulted.

11

Accordingly, the court finds petitioner's third objection without merit.

4.     Claims of Ineffective Assistance of Counsel

Analysis of an ineffective assistance of counsel claim requires application of the two-part test established by Strickland v. Washington, 466 U.S. 668, 690-94 (1984). First, the petitioner must show that his counsel's performance was deficient in that it fell below the standard of reasonably effective assistance. Id. at 687-691. Second, the petitioner must show that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. at 694. The Sixth Amendment provides a criminal defendant with the right to competent counsel that "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012).

Petitioner asserts in his original motion and repeats in his objections to the magistrate judge's recommendations that counsel was deficient for failing, prior to petitioner's entry of a guilty plea, to initiate a motion for discovery and pursue the government's evidence generally, failing to obtain a sworn statement from petitioner or any person in his chain-of-command, failing to obtain an expert in military logistics, and for relying on representations made by the prosecution and counseling a pre-indictment plea prior to full discovery. (See DE 85 at 4-5; DE 97 at 3-5). Each of these claims are barred by petitioner's guilty plea, which includes claims of ineffective assistance of counsel known to defendant at the time of his guilty plea. (Plea Agreement (DE 15) ¶ 2.c).

Prior to entry of guilty plea, petitioner was aware of each of the above allegations. As discussed above and as discussed by the magistrate judge, petitioner's retained counsel represented him from June 2013 through October 2015, and petitioner claims that "[d]uring the intervening two-year period, the defendant stated on numerous occasions [to his counsel] that contents within the criminal information sheet, plea filings and sentencing documents were fraudulent and did not

represent the facts of the case, to no avail." (DE 85 at 5; DE 97 at 5; see also Aff. of Gary T. Ciampa (DE 85-1) ¶ 2 ("When we were first presented the draft information sheet and plea in late summer of 2014, we were stunned at the misrepresentations by the government."); Aff. of Laura J. Ciampa (DE 85-2) ¶ 4 ("[W]e knew the plea agreement was a lie, we told [defense counsel] repeatedly that it was a lie, but they insisted that if it contained even a sliver of truth, Chris must accept the plea. They insisted the plea with a 5k was our best chance."). Petitioner also stated that "[t]hroughout the two years of legal representation, June 2013-0ctober 2015, it was readily apparent to the defendant that defense counsel was completely unfamiliar with military doctrine and procedures related to logistics in support of contingency operations." (DE 85 at 10; DE 97 at 9).

Additionally, as noted by the magistrate judge in the alternative, "counsel's failure to pursue discovery prior to entering a guilty plea was a reasonable strategic decision that did not prejudice Petitioner," in that petitioner provided a statement to law enforcement in conformity with the conduct charged in the criminal information to which he pleaded guilty and counsel advised petitioner to cooperate in an attempt to receive a sentence reduction, which petitioner did, a more than five-year reduction. (M&R (DE 94) at 21-23); see also United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) ("Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase.").

Overlapping with some of the above claims, petitioner additionally asserts in his original motion, and repeats in his objections to the magistrate judge's recommendations, ineffective assistance in preparation for and at sentencing, including 1) in June 2015, the government provided petitioner's counsel with "exculpatory" materials that supported his statements regarding the scope

13

of his conduct, and that counsel failed to present the information to petitioner and to the court; 2) counsel otherwise failed to pursue evidence substantiating petitioner's statements; 3) counsel failed to challenge the government's version of events and directed others to withhold criticism of the government's position; 4) counsel failed to contact third parties with "exculpatory" information; and 5) counsel failed to associate with an expert with knowledge of military logistics. (DE 85 at 5-15; DE 97 at 3-13).[8]

This claim of ineffective assistance for counsel's performance after petitioner pleaded guilty, in connection with his sentencing, likewise fails under Strickland, in that petitioner does not demonstrate that counsel's representation fell below an objective standard of reasonableness considering all the circumstances. See Strickland, 466 U.S. at 688 ("In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."). The information petitioner claims his counsel failed to disclose, to him and to the court, relates to the authorization of sole-sourcing by petitioner's supervisors, the price of fuel and loss calculation, and the extent of petitioner's role in the scheme. As stated by the magistrate judge, this information would have contradicted petitioner's prior statement to the government (DE 57-1), the criminal information (DE 1) to which he pleaded guilty, and the factual basis for his guilty plea (DE 26), and, therefore, counsel was not deficient in failing to pursue this information with petitioner or to assert it at sentencing. Class, 138 S. Ct. at 805 (citations omitted) (holding a guilty plea "relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty"); see also Knowles v.

---

[8] Counsel repeatedly uses the word "exculpatory." As stated above, petitioner challenges the scope of his wrongful conduct and does not assert actual innocence. (See, e.g., DE 85 at 25; DE 97 at 24 (stating the wrongful conduct comprised less than $700,000.00 and petitioner received $230,000.00, of which $170,000.00 was later turned over to the government)).

14

Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").[9] Additionally, it was not objectively unreasonable for counsel to have declined to pursue evidence from third parties or other sources, or hired an expert, that would have contradicted the factual basis to which petitioner pleaded guilty, as well as the loss amount agreed to in the plea agreement. Id.

Petitioner argues the magistrate judge's "holding fails to account for the futility Defendant faced when counsel on his behalf waived any minimal testing of the Government's case through entry of plea to 'criminal information,' instead of indictment by a grand jury . . . . Defendant could not possibly, and did not, know that his attorney would recommend and insist on such conduct that would ultimately result in his being unable to overcome false presentations to the Court related to his culpability at sentencing." (DE 97 at 13).

As previously held by the court, petitioner knowingly and voluntarily pleaded guilty to the two-count criminal information on September 5, 2014. (DE 1). Additionally, petitioner provided to the government a confession on June 13, 2013, (DE 57-1), made no objections at sentencing on September 29, 2015, (see DE 61), and challenged only the court's calculation of restitution on direct appeal, see Brief for Appellant at 7, 19, United States v. Ciampa, No. 15-4613 (4th Cir. January 28, 2016), ECF No. 25), in which petitioner included statement of facts consistent with both his confession and PSR, (compare id. with DE 57-1, PSR (DE 32) at 3-7). Petitioner has failed to show his counsel's performance, which was consistent with petitioner's actions outlined above, fell below the standard of reasonably effective assistance or that there is a reasonable probability that, but for

---

[9] The court additionally notes that at sentencing, when asked by the court if petitioner would like "to say anything about either the presentence report or about [the] sentenced in this case," petitioner replied only that "Your honor, I'm sorry for my actions. I have done all I could to help my country by cooperating in every way, and I'm sorry, your honor." (DE 61 at 2:16-18).

his counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-69, 694.

Accordingly, the court finds petitioner's fourth objection without merit.

C.      Certificate of Appealability

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must demonstrate that reasonable jurists could debate whether the issues presented should have been decided differently or that they are adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). After reviewing the claims presented on collateral review in light of the applicable standard, the court finds that a certificate of appealability is not warranted.

**CONCLUSION**

For the foregoing reasons, the court ADOPTS the recommendation of the M&R. The government's motion to dismiss (DE 88) is GRANTED, and petitioner's motion to vacate, set aside, or correct his sentence (DE 76, DE 85) is DENIED. A certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 14th day of December, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge